## Case No. 4,862.
### FLEMING v. FOY.
[4 Cranch, C. C. 423.] [1]
Circuit Court, District of Columbia. March Term, 1834.

CRANCH, Chief Judge (THRUSTON, Circuit Judge, absent, but assenting). This is understood to be a wager, and that a corre-

[1] [Reported by Hon. William Cranch, Chief Judge.]

spondent writing was given by Mordecai Foy, and that the two promises were mutual considerations to each other. Mr. Morfit, for the defendant, (the appellant,) contends, that no wager can be recovered at common law, and cites the following cases, to wit:

Smith v. Ary, 3 Salk. 175, in which the court held that indebitatus assumpsit would not lie upon mutual promises. because debt would not lie. But no objection was made upon the ground that the wager was unlawful; or that it was a gaming transaction, although it was for money won at play. The case turned entirely upon the form of action; it is, therefore, rather against the point for which it is cited. Eggleton v. Lewin, 3 Salk. 176 (2 Annae); indebitatus assumpsit for £20, won at cards. Upon a writ of error, "the error assigned was, that a general indebitatus assumpsit would not lie for money won at play; and the greater number of judges inclined that it would; but Holt, C. J., and Pollexfen, C. J. of C. B., that it would not, because there must be some meritorious act as a consideration to maintain such action; it will lie against him who holds the wager, because the law implies a promise to deliver the money to the winner." This case also was decided upon the form of the action, and is against the point for which it was cited. It was before the 9th of Anne, and after the 16th of Car. II., which only prohibited wagers to the value of £100. Amory v. Gilman, 2 Mass. 5, was upon a policy of insurance; and the opinion of the court was, that a policy without interest was void; and the reason is expressed in Goddart v. Garrett, 2 Vern. 269, "that these insurances are made for the encouragement of trade; and not that persons unconcerned in trade, nor interested in the ship, should profit by it." The court expressed no opinion respecting the validity of wagers in general, but confined their remarks to wager policies of insurance. The case, therefore, is not in point. Good v. Elliot, 3 Term R. 693. This was an action upon a wager that Susannah Tye had, before a certain day, bought a wagon belonging to D. Coleman. After verdict for the plaintiff, there was a motion in arrest of judgment, upon the ground that all wagers are illegal where the party has no other interest in the subject-matter of them than that which he chooses to create by his bet. This case is cited for the opinion of Mr. Justice Buller, which was overruled by the three other judges. Mr. Justice Grose said: "In thus stating the proposition, it seems admitted that some cases are legal; and, indeed, it cannot, after the different authorities which have been decided, be doubted;" "and that after the cases which have been determined, to say that this action cannot be maintained, would be to make law and not to interpret it." Mr. Justice Ashhurst said: "As to the general ground, namely, whether an action will lie on any wager, that question does not now appear open to argument, it having been settled by so many authorities, both ancient and modern, particularly in the case of Da Costa v. Jones [Cowp. 729]; and Lord Kenyon, C. J., said, "I have not entertained the least doubt upon this question, from the time it was argued down to the present moment." "Now, in order to know what the law has said upon this subject, let us trace it back, and it will be found, that from the earliest times, the books all speak the same language." And again he says: "From the earliest times, therefore, down to the case of Da Costa v. Jones, there appears to have been no doubt on the subject." And in that case, "Lord Mansfield said, that indifferent wagers upon indifferent matters, without interest to either of the parties, are allowed by the law of this country, so far as they have not been restrained by particular acts of parliament; and the restraint imposed in particular cases, supports the general rule." And again, Lord Kenyon says: "Being bound by former decisions; not having the power to alter the law; not finding any one case against the legality of wagers in general; and finding cases without number, wherein wagers have been held to be good, and that the payment of them may be enforced, I think the wager in the present case good at common law." Robinson v. Mearns, 6 Dow. & R. 26. This was an action for money had and received, brought to recover back a sum of £20, which had been deposited by the plaintiff in the hands of the defendant as stake-holder upon a wager on the event of a horse-race. After the race, there being a dispute between the parties as to which horse had won, the plaintiff demanded his deposit. After verdict for the plaintiff, leave was given to the defendant to move for a nonsuit; and one ground taken was, that the wager itself was illegal and void, and no action could be maintained respecting it. It was admitted that the wager was illegal; and the verdict was sustained "on the ground that it" (the money) "was demanded before it was paid over, the wager itself being illegal." But Holroyd, J., said: "Upon looking into the authorities, it will be found that the right of the party to recover back the deposit paid on a wager, does not depend upon whether the wager be illegal and void, or whether it be won or lost; but upon whether the stake-holder has received it upon an illegal consideration; for if he has, he is bound to refund it." This case, we suppose, is cited because it admits that a wager of £20, upon a horse-race, is illegal; and the conclusion drawn from it is, that all wagers are, at common law, illegal. But no such conclusion can be drawn, because a wager for more than £10 upon a horse-race, is void by the 9 Anne, c. 14, taken in connection with 16 Car. II. c. 7, as decided in the cases of Goodburn v. Marley, 2 Strange, 1159; Lynall v. Longbothom, 2 Wils. 36, and Blaxton v. Pye, 2 Wils. 309. On the contrary, the statute which makes void the wager, is evidence that it was not void at common law.

But it is said that the earliest case cited in Good v. Elliot, was that of Andrews v. Herne, 1 Lev. 33, in the 12th year of Charles II., Anno, 1660, and that prior to that time the law was otherwise. But there is no case to the contrary, and Lord Kenyon says that the law was so from the earliest times. It has also been said, that we took the common law as it existed and had been expounded at the time of the first emigration to Maryland, namely, in the year 1633, the date of the charter, which was twenty-seven years before the case of Andrews v. Herne; so that that case is no authority here. If cases made the law, instead of being merely evidence of the law, this would be true; but a recent case is as good evidence of what the common law, in a like case, was, one hundred years ago, as it is of what the common law now is; and such has been the prevailing opinion in Maryland, whose courts have, up to the present time, considered the decisions of the English courts as evidence of the common law in cases in which it has not been authoritatively adjudged otherwise in the courts of Maryland.

In regard to wagers in general, the cases which have been cited have generally been considered in the United States, as settling the law. This court has so considered them; and in the case of Denney v. Elkins, at May term, 1831, in this court [Case No. 3,-790], the law respecting wagers in general was considered as settled; and that case was decided upon that exception to the general rule which condemns wagers against the public policy of the country in regard to the freedom of elections. The general rule is, that a fair wager may be recovered at law. To this rule there are exceptions, as stated in the case of Good v. Elliot, 3 Term R. 693. The wager in the present case, however, does not come within any of the exceptions. Judgment affirmed, with costs.